UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. **00 - 6311** **CR - HUCK**

**MAGISTRATE JUDGE
BROWN**

21 U.S.C. 963
21 U.S.C. 952
21 U.S.C. 846
21 U.S.C. 843(b)
21 U.S.C. 841
18 U.S.C. 1962      Unsealed 11/6/00
18 U.S.C. 1957
18 U.S.C. 1956
18 U.S.C. 2



UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
                                   )
v.                                 )
                                   )
CLARENCE LARK                      )
LARRY CRENSHAW,                    )
WILLIAM GARCIA,                    )
CURTIS NEWTON,                     )
JOHN GALLO,                        )
RICARDO MCHORNE,                   )
CHARLIE HALL,                      )
KEITH LAMPKIN, and                 )
LAWRENCE SEYMORE,                  )
                                   )
                Defendants.        )
_____)

The Grand Jury charges that:

GENERAL ALLEGATIONS

At all times material to this Indictment:

1.   The International Brotherhood of Teamsters, Local 390

(Teamsters Local 390), was part of the International Brotherhood of

Teamsters.

2.   Port Everglades was a major maritime port in the United

States, located in Broward County, Florida. Numerous goods were imported into the United States through Port Everglades.

3.    Goods imported into the United States by ship through Port Everglades, as well as through other ports, are generally placed into metal shipping containers that are capable of being placed on trucks or rail cars and shipped by surface transport to their ultimate destinations. These metal shipping containers were unloaded from ships by stevedores, who used large cranes to lift the containers from docked ships. The containers were then taken by truck from the off-loading site for temporary storage at Port Everglades. In the temporary storage location the containers awaited final clearance by the United States Customs Service to enter the United States.

4.    Crowley American Transport, Inc. (Crowley) was a maritime shipping company located at Port Everglades. Crowley was in the business of importing and exporting goods into and from the United States.

5.    Teamsters Local 390 supplied the stevedores who unloaded the ships docked at Crowley. The stevedores worked in groups, with each group being led by a person called the "Header." Teamsters Local 390 also supplied drivers for various movie and television production companies involved in movie and television productions in South Florida.

6.    Defendant CLARENCE LARK, was president of Teamsters Local 390 and exercised considerable influence over the assignment

2

of Union members to unload ships at Crowley.

7.   Defendant LARRY CRENSHAW, was the brother-in-law of defendant LARK, and served as a transportation captain for Local 390.   As a transportation captain, defendant CRENSHAW was responsible for providing truck drivers from Teamsters Local 390 to movie and television production companies that were operating in South Florida.

8.   The Independent Review Board (IRB) was established by court order in accordance with a consent order entered in United States v. IBT, 88 CIV. 4486 (S.D.N.Y.) to review the activities of the International Brotherhood of Teamsters.  On September 16, 1996, the International Brotherhood of Teamsters, with the approval of the IRB, permanently barred defendant LARK from holding office with any International Brotherhood of Teamsters entity, paid or unpaid, having membership in Local 390 and any other International Brotherhood of Teamsters entity, or from receiving any compensation or benefits from any International Brotherhood of Teamsters entity other than fully vested benefits.

9.   Following his removal as Union President and banishment from the Teamsters Union, however, defendant LARK continued to participate in the management of Teamsters Local 390 and exercise influence over the leadership of the Local 390.

10.   Defendant LARK was a silent partner in, and exercised control over, Star's Choice, Inc. (Star's Choice).   Star's Choice was a Florida corporation that rented vehicles to the movie and

3

television industry. Teamsters Local 390, under the control of defendant LARK, supplied the drivers for the trucks rented by Star's Choice to movie and television production companies located in South Florida.

11. Star's Choice was financed, in part, by funds received by defendant LARK, Willie Jackson and others from the illegal importation and distribution of controlled substances. Star's Choice was used to launder illegal drug money.

12. Defendant LARK controlled the Union transportation captains who were responsible for renting vehicles, on behalf of the movie production companies, from Star's Choice.

13. Klimaxxx Productions Inc. (Klimaxxx), a pornography business, was a California corporation that was incorporated on or about July 12, 1995, by defendant JOHN GALLO.

14. The Bitas Group, Inc. (Bitas), a pornography business, was a California corporation that was incorporated on or about August 29, 1995, by defendant JOHN GALLO.

15. Triple J Enterprises, Inc. (Triple J), a pornography business, was a California corporation that was incorporated on or about September 14, 1995, by defendant GALLO.

16. Klimaxxx, Bitas and Triple J were financed and operated with funds derived from the illegal importation and distribution of controlled substances that were imported into the United States through Port Everglades. These illegal funds were provided to defendant GALLO by Willie Jackson and other conspirators. These

4

conspirators imported drugs through Port Everglades with the assistance of defendant LARK and stevedores associated with Teamsters Local 390, among other persons.

17. Klimaxxx, Bitas, and Triple J were also used to launder illegal drug money in order to promote the continued illegal importation and distribution of controlled substances and to hide the nature and source of illegal narcotics proceeds.

18. Digital Concepts, Inc., was a California corporation, located at 77-530 Enfield Lane, Unit B, Palm Desert, California. This location is an office building that was owned by defendant GALLO and purchased with funds derived from the importation and distribution of controlled substances.

COUNT 1

1. The General Allegations numbered one (1) through twelve (12) inclusively are realleged and expressly incorporated herein.

THE ENTERPRISE

2. From in or about 1985, to the date of the return of this Indictment, in the Southern District of Florida, Broward County, and elsewhere, Teamsters Local 390 constituted an enterprise within the meaning of Title 18, United States Code, Section 1961(4), that is, a union, which was engaged in, and the activities of which affected interstate and foreign commerce.

THE CONSPIRACY

3. From in or about 1985, and continuing thereafter to the date of the return of this Indictment, in the Southern District of

5

Florida, Broward County, and elsewhere, the defendants,

CLARENCE LARK, and
LARRY CRENSHAW,

together with others, being persons employed by and associated with the enterprise, which enterprise engaged in, and the activities of which affected interstate and foreign commerce, did knowingly, intentionally and unlawfully combine, conspire, confederate, and agree together, and with each other, and with persons known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of such enterprise through a pattern of racketeering activity as defined by Title 18, United States Code, Sections 1961(1) and (5).

4. The pattern of racketeering activity that the defendants agreed would be committed in the conduct of the affairs of the enterprise consisted of multiple acts involving violations of the following laws:

A. The importation into the United States of America of cocaine and marijuana, and conspiracy to do so, in violation of and indictable under, Title 21, United States Code, Sections 952 and 963.

B. The possession with the intent to distribute cocaine and marijuana, and conspiracy to do so, in violation of and indictable under, Title 21, United States Code, Sections 841 and 846.

C. The laundering of money derived from a specified unlawful

6

activity , that is the sale of cocaine and marijuana and conspiracy to do so, in violation of and indictable under, Title 18, United States Code, Sections 1956 and 1957.

D.    The interference with interstate and foreign commerce by means of extortion, and conspiracy to do so, that is, the unlawful demand for money from union members under the threat of economic loss, in violation of and indictable under, Title 18, United States Code, Section 1951.

E.    Acts involving extortion, that is the unlawful demand for money from union members by malicious threats, chargeable under Florida State Statute Title 46, Section 836.05

## MANNER AND MEANS OF THE CONSPIRACY

5.    It was  part of the conspiracy that each defendant agreed that a conspirator would commit at least two racketeering acts in conducting the affairs of the enterprise.

6.    It was further part of the conspiracy that defendant CLARENCE LARK would seek to dominate and control the operations of Teamsters Local 390 through extortion, bribery and intimidation in order to run and operate Teamsters Local 390 so as to illegally enrich himself and other members of the conspiracy.

7.    It was further part of the conspiracy that defendants CLARENCE LARK, LARRY CRENSHAW and other conspirators would violate their duties of honesty and trust that they owed to the rank and file members of Teamsters Local 390 in order to generate illegal income for themselves and the other members of the conspiracy.

8.    It was further part of the conspiracy that defendants CLARENCE LARK, LARRY CRENSHAW and other conspirators would demand that other members of Teamsters Local 390 make illegal cash payments to defendants and conspirators in order to receive choice work assignments in the movie and television trades and work assignments at Crowley.

9.    It was further part of the conspiracy that defendants CLARENCE LARK, LARRY CRENSHAW and other conspirators would abuse their responsibilities as officers of Teamsters Local 390 by facilitating the smuggling of over 3,500 kilograms of cocaine and over 39,000 kilograms of marijuana through Port Everglades in exchange for substantial bribes from drug smugglers.

10.    It was further part of the conspiracy that defendants CLARENCE LARK, LARRY CRENSHAW and other conspirators would invest funds illegally derived from the sale of narcotics in businesses such as Star's Choice, among others, for the purpose of concealing their participation in drug trafficking at Port Everglades.

11.    It was further part of the conspiracy that defendants CLARENCE LARK, LARRY CRENSHAW and other conspirators would abuse their positions of trust as union leaders of Teamsters Local 390 by having interests in Star's Choice, while simultaneously controlling union officials responsible for negotiating contracts involving the renting of vehicles from Star's Choice, thereby creating and profiting from a conflict of interest at the expense of Teamsters Local 390 members.

8

12. It was further part of the conspiracy that defendants CLARENCE LARK and other conspirators would, for the purpose of maintaining their positions as union officials and their relationship with Willie Jackson's drug organization, make, and cause to be made, false and misleading statements concerning the administration of Teamsters Local 390 during an investigation conducted by IRB.

13. It was further part of the conspiracy that defendant CLARENCE LARK would continue to maintain and exercise influence over the operation of Teamsters Local 390, even after the IRB removed him as Teamsters Local 390 President, in order to continue to maintain for himself, defendant CRENSHAW and other conspirators a source of illegal income from narcotics trafficking and extortion.

14. It was further part of the conspiracy that the defendants and other conspirators would rig various union elections in order to establish, maintain and further their influence over the leadership of Teamsters Local 390, so that members of the conspiracy would continue to profit from their illegal activities.

15. It was further part of the conspiracy that the defendants would endeavor to form a corrupt relationship with managers and employees of Crowley in order to obtain information about on-going criminal investigations and otherwise further their illegal activities of the enterprise.

16. It was further part of the conspiracy that defendant

9

LARRY CRENSHAW used his position as a transportation captain in the movie industry to extort illegal payments from union members for the benefit of defendant CLARENCE LARK, himself and other members of the conspiracy.

17.  It was further part of the conspiracy that defendants CLARENCE LARK and LARRY CRENSHAW would accept and use large amounts of funds derived from the importation and sale of controlled substances to purchase trucks and other vehicles that would be used by Star's Choice, a company owned and controlled by members of the conspiracy.

18.  It was further part of the conspiracy that members of the conspiracy would undertake all necessary means to prevent the detection of their criminal activities for the purpose of obstructing legitimate criminal investigations, furthering illegal activities and shielding their activities from the scrutiny of law enforcement officials.

All in violation of Title 18, United States Code, Section 1962(d).

<u>COUNT 2</u>

1.  The General Allegations in numbered paragraphs one (1) through eighteen (18), inclusive, are realleged and expressly incorporated herein.

2.  From in or about January 1, 1988, up to and including the date of the return of this Indictment, in the Southern District of Florida, Broward County, and elsewhere, the defendants,

10

CLARENCE LARK,
LARRY CRENSHAW,
WILLIAM GARCIA,
CURTIS NEWTON,
JOHN GALLO,
KEITH LAMPKIN, and
LAWRENCE SEYMORE,

knowingly and willfully combined, conspired, confederated and agreed together, and with each other, and with persons known and unknown to the Grand Jury, to import into the United States controlled substances, that is, in excess of five kilograms of cocaine and in excess of 1000 kilograms of marijuana, in violation of Title 21, United States Code, Section 952.

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

3.   The allegations in numbered paragraphs six (6) through eighteen (18), inclusive, of the Manner and Means section of Count 1 are realleged and expressly incorporated herein as the manner and means of the conspiracy.

4.   It was further part of the conspiracy that defendant WILLIAM GARCIA and other conspirators would supply, and endeavor to supply, thousands of kilograms of cocaine that would be smuggled, or attempted to be smuggled, into the United States for the purpose of further distribution.

5.   It was further part of the conspiracy that defendant CURTIS NEWTON and other conspirators would broker hundreds of kilograms of cocaine that would be smuggled into the United States for further distribution by mid-level distributors.

6.   It was further part of the conspiracy that defendant

11

CURTIS NEWTON would introduce Teamster Local 390 President CLARENCE LARK to drug smuggler Willie Jackson to promote the smuggling of cocaine and marijuana through Port Everglades and the Port of Miami.

7.    It was further part of the conspiracy that defendant CURTIS NEWTON would abuse his position as a member of the International Longshoremen's Association (ILA) and his status as a stevedore at the Port of Miami to further the illegal importation and distribution of controlled substances.

8.    It was further part of the conspiracy that defendants JOHN GALLO, CLARENCE LARK and LARRY CRENSHAW would agree to launder illegal drug proceeds on behalf of members of the conspiracy for the purpose of promoting the success of the drug organization and concealing illegal profits from law enforcement scrutiny.

9.    It was further part of the conspiracy that defendants JOHN GALLO, CLARENCE LARK, and LARRY CRENSHAW would personally profit from the illegal importation of controlled substances through their receipt of illegal drug proceeds from the illegal importation of cocaine and marijuana into the United States.

10.    It was further part of the conspiracy that conspirator Willie Jackson would launder funds through Blue Tip, Inc., which was formed for that purpose, and which acted as a holding company for real estate purchased with funds derived from the sale of controlled substances.

11.    It was further part of the conspiracy that defendants

KEITH LAMPKIN, LAWRENCE SEYMORE and other conspirators would use their positions as members of Teamsters Local 390 to facilitate the removal of narcotics from Port Everglades and would receive cash derived from the importation and sale of controlled substances in exchange for their illegal labors.

12.  It was further part of the conspiracy that defendant KEITH LAMPKIN would physically remove cocaine from Port Everglades.

13.  It was further part of the conspiracy that defendant LAWRENCE SEYMORE would obtain internal Crowley documentation for the benefit of the members of the conspiracy.

14.  It was further part of the conspiracy that members of the conspiracy would undertake all necessary means to prevent the detection of their criminal activities for the purpose of obstructing legitimate criminal investigations, furthering illegal activities and shielding their activities from the scrutiny of law enforcement officials.

15.  It was further part of the conspiracy, that the conspiracy would continue until the narcotics reached their ultimate destination in locations throughout South Florida and the United States.

All in violation of Title 21, United States Code, Section 963.

### COUNT 3

1.  The General Allegations in numbered paragraphs one (1) through eighteen (18), inclusive, are realleged and expressly incorporated herein.

13

2.    From in or about January 1, 1988, up to and including the date of the return of this Indictment, in the Southern District of Florida, Broward County, and elsewhere, the defendants,

> CLARENCE LARK,
> LARRY CRENSHAW,
> WILLIAM GARCIA,
> CURTIS NEWTON,
> JOHN GALLO,
> RICARDO MCHORNE,
> CHARLIE HALL,
> KEITH LAMPKIN, and
> LAWRENCE SEYMORE,

knowingly, intentionally and willfully combined, conspired, confederated and agreed together, and with each other, and with other persons known and unknown to the Grand Jury, to possess with intent to distribute controlled substances, that is, in excess of five kilograms of cocaine and in excess of 1,000 kilograms of marijuana, in violation of Title 21, United States Code, Section 841.

## MANNER AND MEANS OF THE CONSPIRACY

3.    The allegations in numbered paragraphs three (3) through fifteen (15) of the Manner and Means Section of Count 2, are realleged and expressly incorporated herein as the manner and means of the conspiracy.

4.    It was further part of the conspiracy that defendants RICARDO MCHORNE, CHARLIE HALL and other conspirators would distribute, and attempt to distribute, hundreds of kilograms of cocaine to persons located in South Florida and elsewhere.

5.    It was further part of the conspiracy that defendant

14

CHARLIE HALL would accept drug proceeds from other conspirators for investment in various construction projects for the purpose of concealing the source of the funds from law enforcement.

6. It was further part of the conspiracy that defendant RICARDO MCHORNE would purchase property from Willie Jackson with funds derived from the importation and sale of controlled substances.

The defendant RICARDO MCHORNE was previously convicted of a federal felony drug offense.

All in violation of Title 21, United States Code, Section 846.

COUNT 4

1. The General Allegations in numbered paragraphs one (1) through eighteen (18), as set forth above are realleged and expressly incorporated herein.

2. From in or about 1995, up to and including the date of the return of this Indictment, in the Southern District of Florida, Broward County, and elsewhere, the defendants,

CLARENCE LARK, and<br>LARRY CRENSHAW,

did knowingly and willfully combine, conspire, confederate, and agree together and with each other, and with other persons known and unknown to the Grand Jury to commit an offense against the United States, that is, to violate Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (a)(1)(B)(i) and Section 1957.

15

THE PURPOSE AND OBJECT OF THE CONSPIRACY

3.    It was the purpose and object of the conspiracy to:

a.    knowing that the property involved in a financial transaction represented the proceeds of some form of specified unlawful activity, to knowingly and willfully conduct and attempt to conduct financial transactions, as defined by 18 U.S.C. Section 1956(c)(4), affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is: the illegal importation of and the possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841, 846, 952 and 963 and extortion, in violation of Title 18, United States Code Section 1951, and extortion in violation of Florida State Statute Title 46, Section 836.05, with the intent to promote the carrying on of said unlawful activities and, in part, to conceal and disguise the nature, the source, the ownership and the control of the proceeds of the specified unlawful activities, and,

b.    knowingly and willfully engage and attempt to engage in a monetary transaction, affecting interstate and foreign commerce, in criminally derived property that is of a value greater than $10,000, which is from specified unlawful activity that is described in paragraph three (3)(a), above, which is incorporated herein by reference.

THE MANNER AND MEANS OF THE CONSPIRACY

4.    The Allegations in numbered paragraphs three (3) through

16

fifteen (15), inclusive, of the Manner and Means section of Count
2, are realleged and expressly incorporated herein as the manner
and means of the conspiracy.

All in violation of Title 18, United States Code, Section
1956(h).

COUNT 5

1.   The General Allegations in numbered paragraphs one (1)
through eighteen (18), inclusive, as set forth above are realleged
and expressly incorporated herein.

2.   From in or about 1995, up to and including the date of
the return of this Indictment, in the Southern District of Florida,
Broward County, and elsewhere, the defendant,

JOHN GALLO,

did knowingly and willfully combine, conspire, confederate, and
agree with Willie Jackson and with other persons known and unknown
to the Grand Jury to commit an offense against the United States,
that is, to violate Title 18, United States Code, Sections
1956(a)(1)(A)(i) and (a)(1)(B)(i) and Section 1957.

THE PURPOSE AND OBJECT OF THE CONSPIRACY

3.   It was the purpose and object of the conspiracy to:

a.      knowing that the property involved in a financial
transaction represented the proceeds of some form of specified
unlawful activity, to knowingly and willfully conduct and attempt
to conduct financial transactions, as defined 18 U.S.C. Section
1956(c)(4), affecting interstate and foreign commerce, which

17

involved the proceeds of specified unlawful activity, that is: the illegal importation of and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841, 846, 952 and 963, with the intent to promote the carrying on of said unlawful activities and, in part, to conceal and disguise the nature, the source, the ownership and the control of the proceeds of the specified unlawful activities, and,

b.    knowingly and willfully engage and attempt to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000, which is from specified unlawful activity that is described in paragraph three (3)(a), above, which is incorporated herein by reference.

<u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

4.    The Allegations in numbered paragraphs three (3) through fifteen (15), inclusive, of the Manner and Means section of Count 2, are realleged and expressly incorporated herein as the manner and means of the conspiracy.

5.    It was further part of the conspiracy that defendant JOHN GALLO, following his declaration of bankruptcy in 1994, would use the funds generated from the illegal importation and sale of controlled substances to fund various companies that produced and marketed pornography, including, but not limited to, Klimaxxx, Bitas and Triple J.

6.    It was further part of the conspiracy that conspirator Jeffrey McCleod would introduce conspirator Willie Jackson to

defendant JOHN GALLO for the purpose of laundering funds generated by the smuggling of controlled substances through Port Everglades and their subsequent distribution in South Florida and elsewhere.

7.   It was further part of the conspiracy that defendant JOHN GALLO would launder a portion of the conspiracy's illegally generated funds both to hide the source of those funds and to promote the illegal activities undertaken by the conspiracy.

8.   It was further part of the conspiracy that defendant JOHN GALLO would launder a portion of the illegal drug proceeds through overseas bank accounts in an effort to disguise and conceal the true source of the funds.

9.   It was further part of the conspiracy that defendant JOHN GALLO would launder a portion of the illegal drug proceeds through his drug funded pornography companies in order to disguise and hide the true source of the funds.

10.   It was further part of the conspiracy that defendant JOHN GALLO would launder well in excess of $1 million dollars in illegal drug proceeds for co-conspirator Willie Jackson.

11.   It was further part of the conspiracy that defendant JOHN GALLO would earn substantial illegal fees from the laundering of the illegal drug proceeds on behalf of co-conspirator Willie Jackson.

All in violation of Title 18, United States Code, Section 1956(h).

19

## COUNTS 6-13

1.   On or about the dates enumerated below, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### CLARENCE LARK,

knowing that the property involved represented the proceeds of some form of unlawful activity, did knowingly and willfully conduct and attempt to conduct financial transactions in various amounts affecting interstate and foreign commerce, as described below, each transaction occurring on or about the date indicated and constituting a separate Count of the Indictment, which transactions involved the proceeds of specified unlawful activity, that is, narcotics offenses in violation of Title 21, United States Code, Sections 841, 846, 952, and 963.

2.   By these financial transactions, the defendant intended to promote the carrying on of said specified unlawful activities, and knew that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activities.

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|---|---|---|---|
| 6 | November 9, 1995 | $ 2,572.00 | Deposit of cash into bank account number 190561 at Peoples Credit Union |

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|---|---|---|---|
| 7 | November 9, 1995 | $15,000.00 | Purchase of cashier's check from Peoples Credit Union, made payable to Powell Ford |
| 8 | November 10, 1995 | $15,000.00 | Exchange of cashier's check made payable to Powell Ford for cashier's check made payable to Star's Choice, Inc., from Peoples Credit Union |
| 9 | November 14, 1995 | $15,000.00 | Deposit of cashier's check #38080371 issued by Peoples Credit Union into Star's Choice, Inc. checking account number 1596371680 at Barnett Bank |
| 10 | January 5, 1996 | $14,000.00 | Purchase of cashier's check #CC013181 made payable to Southern Truck Body Corp. from Blonnie Tomlin's savings account at Dade County School Employee Credit Union. (CLARENCE LARK delivered the cashier's check to Southern Truck Body Corp. in Tampa, Florida, on or about January 9, 1996.) |
| 11 | January 5, 1996 | $14,000.00 | Purchase of cashier's check #CC000471480 made payable to Southern Truck Body Corp. from Blonnie Tomlin's savings account at First Union Bank (CLARENCE LARK delivered the cashier's check to Southern Truck Body Corp. in Tampa, Florida, on or about January 9, 1996.) |

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|-----------------------|
| 12 | June 24, 1996 | $ 5,000.00 | Purchase of cashier's check #CC016391 made payable to Southern Truck Body Corp. from Bonnie Tomlin's savings account at the Dade County School Employee Credit Union (CLARENCE LARK delivered the cashier's check to Southern Truck Body Corp. in Tampa, Florida, on or about June 26, 1996) |
| 13 | June 24, 1996 | $ 5,000.00 | Purchase of cashier's check #001382576 made payable to Southern Truck Body Corp. from Bonnie Tomlin's savings account at First Union Bank. (CLARENCE LARK delivered the cashier's check to Southern Truck Body Corp. in Tampa, Florida, on or about June 26, 1996.) |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (a)(1)(B)(i) and Title 18, United States Code Section 2.

<u>COUNTS 14-16</u>

1.  On or about the dates set forth below at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

LARRY CRENSHAW,

did knowingly engage and attempt to engage and did aid and abet,

22

counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions, by, through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the deposit, withdrawal, and transfer of funds, such property having been derived from a specified unlawful activity, that is, narcotics trafficking, in violation of Title 21, United States Code, Sections 841, 846, 952 and 963.

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|------------------------|
| 14 | December 12, 1995 | $13,000.00 | Purchase of cashier's check #00508035 from First Union Bank made payable to Star's Choice, Inc. |
| 15 | March 4, 1996 | $15,000.00 | Purchase of cashier's check #002166117 from First Union Bank made payable to Star's Choice, Inc. |
| 16 | June 24, 1996 | $15,000.00 | Purchase of cashier's check #002192192 from First Union Bank made payable to Southern Truck Body Corporation. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

### COUNTS 17-34

1.   On or about the dates enumerated below, at Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

23

JOHN GALLO,

knowing that the property involved represented the proceeds of some form of unlawful activity, did knowingly and willfully conduct and attempt to conduct financial transactions in various amounts affecting interstate and foreign commerce, as described below, each transaction occurring on about the date indicated and constituting a separate Count of the Indictment, which transactions involved the proceeds of specified unlawful activity, that is, narcotics offenses in violation of Title 21, United States Code, Sections 841, 846, 952, and 963.

3. By these financial transactions, the defendant intended to promote the carrying on of said specified unlawful activities, and knew that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activities.

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|----------------------|
| 17 | February 27, 1996 | $21,000 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into Willie Jackson's account at NationsBank, account number 3603881656 |
| 18 | April 12, 1996 | $163,000 | Deposit of wire transfer of $163,000 from the ABN Amro Bank, in the Netherlands to Willie Jackson's account at NationsBank, account number 3710753201 |

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|---|---|---|---|
| 19 | April 23, 1996 | $18,676 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into Willie Jackson's account at NationsBank, account number 3603881656 |
| 20 | May 28, 1996 | $340,000 | Wire transfer of $340,000 from the ABN Amro Bank, in the Netherlands to Willie Jackson's account at NationsBank, account number 3710753201 |
| 21 | June 3, 1996 | $16,320 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into Willie Jackson's account at NationsBank, account number 3603881656 |
| 22 | June 3, 1996 | $22,700 | Deposit of certified check issued by Palm Springs Savings Bank into Willie Jackson's account at NationsBank, account number 3603881656 |
| 23 | June 3, 1996 | $27,300 | Deposit of certified check issued by Palm Springs Savings Bank into Willie Jackson's account at NationsBank, account number 3603881656 |
| 24 | June 27, 1996 | $22,782 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into Willie Jackson's account at NationsBank, account number 3603881656 |

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|---|---|---|---|
| 25 | July 23, 1996 | $12,685 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into Willie Jackson's account at NationsBank, account number 3603881656 |
| 26 | August 23, 1996 | $18,76.50 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into Willie Jackson's account at NationsBank, account number 3603881656 |
| 27 | October 7, 1996 | $17,500 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into Willie Jackson's account at NationsBank, account number 3603881656 |
| 28 | November 12, 1996 | $28,600 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into Willie Jackson's account at NationsBank, account number 3603881656 |
| 29 | December 10, 1996 | $312,000 | Deposit of $312,000 check issued from the Brussels Lambert Bank into the account of Willie Jackson at NationsBank, account number 3710753201 |
| 30 | August 6, 1997 | $98,050.55 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into the account of Willie Jackson at NationsBank, account number 3710753201 |

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|---|---|---|---|
| 31 | September 4, 1997 | $91,000 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into the account of Willie Jackson at NationsBank, account number 3710753201 |
| 32 | October 8, 1997 | $78,000 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into the account of Willie Jackson at NationsBank, account number 3710753201 |
| 33 | January 6, 1998 | $63,000 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into the accounts of Willie Jackson at NationsBank, account numbers 3710753201 and 3433152904 (split between the two accounts) |
| 34 | January 26, 1998 | $63,000 | Deposit of Bitas Group check drawn on the Palm Springs Savings Bank into the accounts of Willie Jackson at NationsBank, account numbers 3710753201 and 3433152904 (split between the two accounts) |

All in violation of Title 18, United States Code, Section 1956 (a)(1)(A)(i) and (a)(1)(B)(i) and Title 18, United States Code, Section 2.

## COUNT 35

On or about March 30, 1996, at Broward County, in the Southern District of Florida, and elsewhere, the defendant,

WILLIAM GARCIA,

27

did knowingly and intentionally import into the United States, from a place outside thereof, a Schedule II controlled substance, that is, at least five kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2.

### COUNT 36

On or about March 30, 1996, at Broward County, in the Southern District of Florida, the defendants,

**WILLIAM GARCIA, and
RICARDO MCHORNE,**

did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, that is, at least five kilograms of a mixture and substance containing a detectable amount of cocaine, the defendant RICARDO MCHORNE having been previously convicted of a federal felony drug offense, all in violation of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 2.

### COUNT 37

On or about September 6, 1996, at Broward County, in the Southern District of Florida, and elsewhere, the defendant,

**KEITH LAMPKIN,**

did knowingly and intentionally import into the United States, from a place outside thereof, a Schedule II controlled substance, that is, at least five kilograms of a mixture and substance containing

28

a detectable amount of cocaine, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2.

### COUNT 38

On or about September 6, 1996, at Broward County, in the Southern District of Florida, and elsewhere the defendants,

CHARLIE HALL, and
KEITH LAMPKIN,

did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, that is, at least five kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 2.

### COUNT 39

On or about October 26, 1996, at Broward County, in the Southern District of Florida, and elsewhere, the defendant,

LAWRENCE SEYMORE,

did knowingly and intentionally use a communications facility, that is, a telephone, in committing, causing and facilitating the commission of a felony, that is, a violation of Title 21, United States Code, Section 952 (importation of a controlled substance), all in violation of Title 21, United States Code, Section 843(b) and Title 18, United States Code, Section 2.

### COUNT 40

On or about February 1, 1997, at Broward County, in the

29

Southern District of Florida, and elsewhere, the defendant,

WILLIAM GARCIA,

did knowingly and intentionally import into the United States, from a place outside thereof, a Schedule II controlled substance, that is, at least five kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2.

## COUNT 41

On or about July 27, 1997, at Broward County, in the Southern District of Florida, and elsewhere, the defendant,

WILLIAM GARCIA,

did knowingly and intentionally import into the United States, from a place outside thereof, a Schedule II controlled substance, that is, at least five kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2.

## COUNT 42

On or about October 16, 1997, at Broward County, in the Southern District of Florida, and elsewhere, the defendant,

CURTIS NEWTON,

did knowingly and intentionally import into the United States, from a place outside thereof, a Schedule II controlled substance, that is, at least five kilograms of a mixture and substance containing

30

a detectable amount of cocaine, in violation of Title 21, United States Code, Section 952 and Title 18, United States Code, Section 2.

### COUNT 43

On or about October 16, 1997, at Broward County, in the Southern District of Florida, and elsewhere, the defendants,

CURTIS NEWTON, and
CHARLIE HALL,

did knowingly and intentionally possess with intent to distribute a Schedule II controlled substance, that is, at least five kilograms of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 2.

### RICO FORFEITURE SECTION

1. Count 1 of this Indictment, as set forth above, is realleged and expressly incorporated by reference herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1963. Through the pattern of racketeering activity, defendants CLARENCE LARK, and LARRY CRENSHAW; and CHARLIE HALL:

i. acquired and maintained interests in violation of Title 18, united States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii. an interest in, security of, claims against, and property and contractual rights which afford a source of influence over the

31

enterprise named and described herein which they established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2);

iii. property constituting and derived from proceeds which the defendants obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

Such forfeiture shall include all property, real and personal, tangible and intangible, including but not limited to all interest in the following:

A. Approximately $11,000,000 (eleven million dollars) in illegal revenue generated from the illegal drug importation and distribution operations of the enterprise set forth above;

B. 2120 N.W. 111th Street, Miami, Fl. The legal description is as follows: Lot 8 in Block 1, of LITTLE RIVER FARMS, according to the plat thereof, recorded in Plat Book 44, at Page 39, of the Public Records of Miami-Dade County, Florida; and

C. The following vehicles: -

    1. A 1988 Ford CF6000 Truck, VIN # 9BFPH60P6JDM00085;

    2. A 1987 Ford CF6000 Truck, VIN #9BFPH60P3HDM03231;

    3. A 1986 Ford CF6000 Truck, VIN # 9BFPH60P9GDM00929;

    4.    A 1987 Ford CF6000 Truck, VIN #9BFPH60P2HDM01809;

    5.    A 1992 UD Truck, VIN # JNAU4R0J8NAM04106;

    6.    A 1996 Ford Tractor, VIN #1FDYA95D7TVA20667;

    7.    A 1995 Ford F350 Truck, VIN # 1FTJW35G0SEA79864;

    8.    A 1995 Ford F350 Truck, VIN # 1FTJW35G8SEA79868;

    9.    A 1995 Ford F350 Truck, VIN # 1FTJW35F1SEA72929;

    10.    A 1995 Ford F350 Truck, VIN # 1FTJW35F4SEA72925;

    11.    A 1995 Ford F350 Truck, VIN # 1FTJW35F9SEA74668;

    12.    A 1995 Ford F350 Truck, VIN # 1FTJW35F2SEA74737;

    13.    A 1995 Ford F350 Truck, VIN # 1FTJW35F6SEA74661;

    14.    A 1996 Ford Tractor, VIN # 1FDYA95D5TVA20666 (Part of the "Honey Wagon");

    15.    A Trailer, VIN # 1S9A3AL29TT010035 (Part of the "Honey Wagon").

2. If any of the above described forfeitable property, as a result of any act and omission of a defendant and/or the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred to, sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value;

(e) has been commingled with other property which cannot be subdivided;

It is the intent of the United States, pursuant to Title 18,

United States Code, Section 1963(m) to seek forfeiture of any other property of the defendants up to the value of the above described property.

NARCOTICS FORFEITURE SECTION

1.    Counts 2 through 3, 35-38 and 40-43 (inclusive) of this Indictment are realleged and hereby incorporated by reference herein for the purpose of alleging forfeitures pursuant to Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982.    As a result of convictions on any of the offenses charged in Counts 2 through 3, 35-38 and 40-43 (inclusive) of this Indictment, defendants  CLARENCE LARK, JOHN GALLO, LARRY CRENSHAW and CHARLIE HALL  shall forfeit to the United States:

Any and all property, real and personal, tangible and intangible, constituting and derived from, any proceeds the defendants obtained, directly and indirectly, as a result of the violations alleged in Counts 2 through 3, 35-38 and 40-43 (inclusive), and any of the defendants' property used, and intended to be used, in any manner or part, to commit and to facilitate the commission of such violations.

Such forfeitures shall include property, real and personal, tangible and intangible, including any interest of the defendants in:

A. The assets that have been identified in paragraph one (1)(A)(B) and (C) of the RICO forfeiture section are realleged and expressly incorporated herein as part of the assets subject to

34

forfeiture in this section.

B.   Triple J. Enterprises, Inc.;

C.   Bitas Group, Inc;

D.   Klimaxxx Productions, Inc.;

E.   Digital Concepts International, Inc.; and

F.   77-530 Enfield Lane; Unit B, Palm Desert, California. The legal description is as follows: Parcel 2 of Parcel Map 26369 as shown by map on file in Book 171 pages 77 and 78, inclusive, of Parcel Maps, Records of Riverside County, California together with an undivided 1/9th interest in Parcel 10 of said Parcel Map.

2.   If any of the above-described forfeitable property, as a result of any act and omission of a defendant and/or the defendants:

(a)   cannot be located upon the exercise of due diligence;

(b)   has been transferred to, sold to, or deposited with a third person;

(c)   has been placed beyond the jurisdiction of the Court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section853(p) to seek forfeiture of any other property of said defendants up to the value of the above described forfeitable property.

All pursuant to Title 21, United States Code, Section 853.

## MONEY LAUNDERING FORFEITURE SECTION

1.    Counts  4  through  5  and  6-34  (inclusive)  of  this Indictment  are  realleged  and  hereby  incorporated  by  reference herein  for  the  purpose  of  alleging  forfeitures  pursuant  to  Title 21,  United  States  Code,  Section  853  and  Title  18,  United  States Code,  Section  982.    As  a  result  of  convictions  on  any  of  the offenses c The defendant RICARDO MCHORNE was previously convicted of a federal felony drug offense.

harged  in  Counts  4  through  5  and  6-34  (inclusive)  of  this Indictment,  defendants  CLARENCE LARK,  JOHN GALLO,  LARRY CRENSHAW and CHARLIE HALL  shall forfeit to the United States:

Any  and  all  property,  real  or  personal,  involved  in  such offenses,  or  any  property  traceable  to  such  property  for  the violations alleged in Counts 4 through 4 and 6-34 (inclusive)

Such  forfeitures  shall  include  property,  real  and  personal, tangible  and  intangible,  including  any  interest  of  the  defendants in:

A. The  assets  that  have  been  identified  in  paragraph  one (1)(A)(B)  and  (C)  of  the  RICO  forfeiture  section  are  realleged  and expressly  incorporated  herein  as  part  of  the  assets  subject  to forfeiture in this section;

B.    Triple J. Enterprises, Inc.;

C.    Bitas Group, Inc;

D.    Klimaxxx Productions, Inc.;

E.    Digital Concepts International, Inc.; and

36

shown by map on file in Book 171 pages 77 and 78, inclusive, of Parcel Maps, Records of Riverside County, California together with an undivided 1/9th interest in Parcel 10 of said Parcel Map.

2.    If any of the above-described forfeitable property, as a result of any act and omission of a defendant and/or the defendants:

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred to, sold to, or deposited with a third person;

(c)    has been placed beyond the jurisdiction of the Court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b) to

seek forfeiture of any other property of said defendants up to the value of the above described forfeitable property.

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL

FOREPERSON

GUY A. LEWIS
UNITED STATES ATTORNEY

MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY

JEFFERY H. SLOMAN
ASSISTANT UNITED STATES ATTORNEY

38

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

v.

CLARENCE LARK, et al

**CASE NO.** _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information**:

**Court Division:** (Select One)

____ Miami    ____ Key West
x   FTL    ____ WPB ____ FTP

New Defendant(s)        Yes ____    No ____
Number of New Defendants   ____
Total number of counts    ____

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:        (Yes or No) NO _____
      List language and/or dialect _____

4.    This case will take   70   days for the parties to try.

5.    Please check appropriate category and type of offense listed below:
      (Check only one)                                    (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | _____ | Felony | _____ |
| V | 61 days and over | X | | |

6.    Has this case been previously filed in this District Court?  (Yes or No)  NO
If yes:
Judge: _____    Case No. _____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) NO _____
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _____
Defendant(s) in federal custody as of  None _____
Defendant(s) in state custody as of   None _____
Rule 20 from the _____    District of _____

Is this a potential death penalty case? (Yes or No)   No _____

7.    Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?  X  Yes __ No    If yes, was it pending in the Central Region? x  Yes __ No

8.    Did this case originate in the Narcotics Section, Miami? ___ Yes  x  No

MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY
COURT ID. A5500209

*Penalty Sheet(s) attached

REV.6/27/00

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  **CLARENCE LARK**

Count #:1      18 U.S.C. 1962(d)    Rico Conspiracy

*Max.  Life imprisonment and up to a $4,000,000.00 fine

Count #:2      21 U.S.C. 963        Narcotics Importation Conspiracy

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 3      21 U.S.C. 846        Narcotics Distribution Conspiracy

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 4      18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 Years and up to a $500,000.00 fine or twice the amount laundered, whichever is greater

Count #: 6-13      18 U.S.C. 1956        Substantive Money Laundering

*Max. Penalty: 20 Years and up to a $500,000.00 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: LARRY CRENSHAW

Count #: 1    18 U.S.C. 1962(d)    Rico Conspiracy

*Max. Penalty: Life imprisonment and up to a $4,000,000.00 fine

Count #: 2    21 U.S.C. 963    Narcotics Importation Conspiracy

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 3    21 U.S.C. 846    Narcotics Distribution Conspiracy

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 4    18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 Years and up to a $500,000.00 fine or twice the amount laundered, whichever is greater

Count #:14-16 18 U.S.C. 1957    Substantive Money Laundering

*Max. Penalty: 10 Years and up to a $250,000.00 fine or twice the amount laundered, whichever is greater

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: WILLIAM GARCIA

Count #:2      21 U.S.C. 963        Narcotics Importation Conspiracy

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 3     21 U.S.C. 846        Narcotics Distribution Conspiracy

*Max. Penalty: Minimum 10 years to Life imprisonment and up to a $4,000,000.00 fine

Count #:35     21 U.S.C. 952        Drug Importation

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 36    21 U.S.C. 841        Possession with Intent to Distribute

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #:40     21 U.S.C. 952        Drug Importation

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: WILLIAM GARCIA

Count #:41     21 U.S.C. 952     Drug Importation

\*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name: CURTIS NEWTON

Count #: 2    21 U.S.C. 963    Narcotics Importation Conspiracy

_____

_____

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 3    21 U.S.C. 846    Narcotics Distribution Conspiracy

_____

_____

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 42    21 U.S.C. 952    Drug Importation

_____

_____

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 43    21 U.S.C. 841    Possession with Intent to Distribute

_____

_____

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #:

_____

_____

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: JOHN GALLO

Count #: 2    21 U.S.C. 963    Narcotics Importation Conspiracy

---

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 3    21 U.S.C. 846    Narcotics Distribution Conspiracy

---

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 5    18 U.S.C. 1956(h)    Money Laundering Conspiracy

---

*Max. Penalty: 20 Years imprisonment and up to a $500,000.00 fine or twice the amount laundered, whichever is greater

Count #: 17-34    18 U.S.C. 1956    Substantive Money Laundering

---

*Max. Penalty: 20 Years imprisonment and up to a $500,000.00 fine or twice the amount laundered, whichever is greater

Count #:

---

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name: RICARDO MCHORNE

Count #: 3    21 U.S.C. 846    Narcotics Distribution Conspiracy

_____

_____

\*Max.  Penalty: Minimum 20 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 36    21 U.S.C. 841    Possession with Intent to Distribute

_____

_____

\*Max. Penalty: Minimum 20 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #:

_____

_____

\*Max. Penalty:

Count #:

_____

_____

\*Max. Penalty:

Count #:

_____

_____

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: CHARLIE HALL

Count #: 3    21 U.S.C. 846    Narcotics Distribution Conspiracy

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 38    21 U.S.C. 841    Possession with Intent to Distribute

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #:43    21 U.S.C. 841    Possession with Intent to Distribute

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible *term* of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name: KEITH LAMPKIN

Count #: 2    21 U.S.C. 963    Narcotics Importation Conspiracy

_____

_____

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #:3    21 U.S.C. 846    Narcotics Distribution Conspiracy

_____

_____

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 37    21 U.S.C. 952    Drug Importation

_____

_____

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 38    21 U.S.C. 841    Possession with Intent to Distribute

_____

_____

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #:

_____

_____

*Max. Penalty:

_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name: LAWRENCE SEYMORE

Count #: 2    21 U.S.C. 963    Narcotics Importation Conspiracy

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 3    21 U.S.C. 846    Narcotics Distribution Conspiracy

*Max. Penalty: Minimum 10 Years to Life imprisonment and up to a $4,000,000.00 fine

Count #: 39    21 U.S.C. 843(b)    Use of Communications Facility in furtherance of drug trafficking

*Max. Penalty: 4 Years imprisonment and up to a $250,000.00 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT:     **CLARENCE LARK** _____

_____ PRETRIAL DETENTION _____
(Surety, Recognizance, Corp. Surety, Cash) (Jail)
CSB (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY

Last Know Address: _____

_____

_____

What Facility: _____

_____

Agent(s):     FBI, DEA AND CUSTOMS _____
(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (CUSTOMS)  (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT:  **LARRY CRENSHAW**

$250,000 CORP. SURETY BOND W/NEBBIA

(Surety, Recognizance, Corp. Surety, Cash) (Jail)
CSB (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____

**MICHAEL J. DITTOE**
**ASSISTANT UNITED STATES ATTORNEY**

Last Know Address: _____

_____

_____

What Facility: _____

_____

Agent(s):     FBI, DEA AND CUSTOMS
(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (CUSTOMS)  (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT: __**WILLIAM GARCIA**_____

_____PRETRIAL DETENTION_____
(Surety, Recognizance, Corp. Surety, Cash) (Jail)
CSB (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY

Last Know Address: _____

_____

_____

What Facility: _____

_____

Agent(s):     __FBI, DEA AND CUSTOMS_____
(FBI) (SECRET SERVICE) (DEA) (IRS) (CUSTOMS) (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION


DEFENDANT: __**CURTIS NEWTON**_____


_____$500,000 CORP. SURETY BOND W/NEBBIA_____

(Surety, Recognizance, Corp. Surety, Cash) (Jail)
CSB (No Bond) (Warrant) (Summons) (Marshal's Custody)


By: _____
    **MICHAEL J. DITTOE**
    **ASSISTANT UNITED STATES ATTORNEY**


Last Know Address: _____

_____

_____

What Facility: _____

_____

Agent(s): ___FBI, DEA AND CUSTOMS_____
          (FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (CUSTOMS)  (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT: __**JOHN GALLO**_____

_____**PRETRIAL DETENTION**_____
(Surety, Recognizance, Corp. Surety, Cash) (Jail)
CSB (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
**MICHAEL J. DITTOE**
**ASSISTANT UNITED STATES ATTORNEY**

Last Know Address: _____

_____

_____

What Facility: _____

_____

Agent(s): _____**FBI, DEA AND CUSTOMS**_____
(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (CUSTOMS)  (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT: ____ **RICARDO MCHORNE** _____

_____ PRETRIAL DETENTION _____
(Surety, Recognizance, Corp. Surety, Cash) (Jail)
CSB (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
**MICHAEL J. DITTOE**
**ASSISTANT UNITED STATES ATTORNEY**

Last Know Address: _____

_____

_____

What Facility: _____

_____

Agent(s): ____ FBI, DEA AND CUSTOMS _____
(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (CUSTOMS)  (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT: ___**CHARLIE HALL**_____

_____**$500,000 CORP. SURETY BOND W/NEBBIA**_____

(Surety, Recognizance, Corp. Surety, Cash) (Jail)
CSB (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
**MICHAEL J. DITTOE**
**ASSISTANT UNITED STATES ATTORNEY**

Last Know Address: _____

_____

_____

What Facility: _____

_____

Agent(s): ___**FBI, DEA AND CUSTOMS**_____
(FBI) (SECRET SERVICE) (DEA) (IRS) (CUSTOMS) (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT: __**KEITH LAMPKIN**_____

_____ $100,000 CORP. SURETY BOND W/NEBBIA _____

(Surety, Recognizance, Corp. Surety, Cash) (Jail)
CSB (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
**MICHAEL J. DITTOE**
**ASSISTANT UNITED STATES ATTORNEY**

Last Know Address: _____

_____

_____

What Facility: _____

_____

Agent(s): ___FBI, DEA AND CUSTOMS_____
(FBI) (SECRET SERVICE) (DEA) (IRS) (CUSTOMS) (**OTHER**)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### BOND RECOMMENDATION

DEFENDANT: ___**LAWRENCE SEYMORE**_____

_____$100,000 CORP. SURETY BOND W/NEBBIA_____

(Surety, Recognizance, Corp. Surety, Cash) (Jail)
CSB (No Bond) (Warrant) (Summons) (Marshal's Custody)

By: _____
**MICHAEL J. DITTOE**
**ASSISTANT UNITED STATES ATTORNEY**

Last Know Address: _____

_____

_____

What Facility: _____

_____

Agent(s):        __FBI, DEA AND CUSTOMS_____
(FBI)  (SECRET SERVICE)  (DEA)  (IRS)  (CUSTOMS)  (**OTHER**)